**United States Bankruptcy Court**
**District of South Dakota**



Charles L. Nail, Jr.
Bankruptcy Judge

---

Federal Building and United States Post Office
225 South Pierre Street, Room 211
Pierre, South Dakota 57501-2463

Telephone: (605) 945-4490
Fax: (605) 945-4491

July 18, 2008

Bruce J. Gering
Assistant United States Trustee
314 South Main Avenue, Suite 303
Sioux Falls, South Dakota 57104-6462

Stan H. Anker, Esq.
Attorney for Debtors
1301 West Omaha Street, Suite 108
Rapid City, South Dakota 57701

    Subject:    *In re Thomas Wayne McNary and Janet Marjorie McNary*
                        Chapter 7; Bankr. No. 08-50120

Dear Counsel:

      The matter before the Court is the United States Trustee's Motion for Judgment on the Pleadings with respect to his pending Motion to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(3). This is a core proceeding under 28 U.S.C. § 157(b)(2). This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c). As discussed below, the United States Trustee's motion will be granted.

      **Facts.** In his Motion to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(3) (doc. 15), the United States Trustee alleged, *inter alia*:

      1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a) & (b); 28 U.S.C. §§ 157(a) & (b)(1); and 28 U.S.C. § 151. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (B). This motion is filed pursuant to 11 U.S.C. § 707(b)(3).

      2. Debtors filed a voluntary petition under chapter 7 of title 11 of the United States Code on April 25, 2008. Forrest C. Allred was appointed as the chapter 7 trustee and continues to serve in that capacity.

Re: *Thomas Wayne McNary and Janet Marjorie McNary*
July 18, 2008
Page 2

    3. The meeting of creditors pursuant to 11 U.S.C. § 341 was conducted on May 28, 2008. Pursuant to Interim Federal Rule of Bankruptcy Procedure 1017(e) as adopted by this Court, [the United States Trustee's] motion [to dismiss was] filed not later than 60 days from the date of that meeting.

    4. Debtors are individuals and have what appear to be primarily consumer debts. (See, Debtors' Petition and Schedules D, E, and F.)

    5. On their Schedule D (Creditors Holding Secured Claims), Debtors listed one secured creditor with a claim of $126,812.00.

    6. On their Schedule E (Creditors Holding Unsecured Priority Claims), Debtors listed no creditors.

    7. On their Schedule F (Creditors Holding Unsecured Nonpriority Claims), Debtors listed 48 unsecured creditors with claims totaling $600,022.00. During their meeting of creditors, the Debtors testified that some of the amounts on Schedule F may be duplicates because the accounts had been sold or transferred, but that they listed all known creditors out of an abundance of caution.

In their objection to the United States Trustee's motion to dismiss, Debtors admitted each of the foregoing allegations. Debtors denied the United States Trustee's remaining allegations, including the following:

    8. On their Schedules I and J, Debtors listed $4,308.00 of monthly take-home pay and $4,164.00 of monthly expenses, leaving monthly disposable income of $1[,]162.00.[1]

    13. It appears that Debtors may have understated their income on Schedule I. According to pay advices submitted to the United States Trustee, during the period from 1/4/08 through 5/6/08, Mr. McNary earned average monthly net pay of $3,230.65. During the period from October 19, 2007 through March 20, 2008, Mrs. McNary earned

---

    [1] The $4,164.00 and $1,162.00 figures are both typographical errors. According to Debtors' schedule J, their monthly expenses are $4,146.00, and their monthly disposable income is $162.00.

Re: *Thomas Wayne McNary and Janet Marjorie McNary*
July 18, 2008
Page 3

> average monthly net income of [$]1,921.69.  When these incomes are combined, the Debtors have total average monthly net income of $5,152.34.
>
> 14.  On their Schedule J, Debtors have indicated that their monthly expenses are $4,146.00.  However, the Debtors have budgeted $300.00 per month for college expenses of an adult daughter.  The United States Trustee believes that the creditors should not have to pay education expenses of the Debtors' adult children.  When this expense is removed, the Debtors are left with monthly expenses of $3,846.00.  After deducting this amount from the Debtors' net monthly income, the Debtors are left with monthly net disposable income of $1,306.34.  This would allow them to repay $43,360.04 after deducting chapter 13 trustee fees.

In their objection to the United States Trustee's motion for judgment on the pleadings, however, Debtors conceded their schedules I and J show monthly net income of $162.00[2] and admitted giving their adult children $300.00 per month to help defray their expenses.[3]

**Law.**  In considering a motion for judgment on the pleadings, the Court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citing *Franklin High Yield Tax-Free Income Fund v. County of Martin*, 152 F.3d 736, 738 (8th Cir. 1998) (citing *Lion Oil Co. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir. 1996))).  The Court may grant the motion "'only where the moving party has clearly established that no material issue of fact remains

---

[2]  As noted above, Debtors generally denied the United States Trustee's allegations regarding their monthly take-home pay, monthly expenses, and monthly disposable income.  If they did so because of the typographical errors referenced in the preceding footnote, the Court would have preferred Debtors had specifically stated that in their objection.  *See* Fed.R.Civ.P. 8(b)(2) and (4) and Local Bankr. R. 9014-2.

[3]  As noted above, Debtors generally denied the United States Trustee's allegations regarding the $300.00 in question.  If they did so because they spend that sum on *two* adult children rather than one adult child, the Court would have preferred Debtors had specifically stated that in their objection.  *See* Fed.R.Civ.P. 8(b)(2) and (4) and Local Bankr. R. 9014-2.

Re: *Thomas Wayne McNary and Janet Marjorie McNary*
July 18, 2008
Page 4


and the moving party is entitled to judgment as a matter of law.'" *Waldron*, 388 F.3d at 593 (quoting *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001) (citing *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993))).

The Court may dismiss a chapter 7 case "if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]." 11 U.S.C. § 707(b)(1).

> In considering under [§ 707(b)](1) whether the granting of relief would be an abuse of the provisions of [chapter 7] in which the presumption in [§ 707(b)(2)](A)(i) . . . does not arise or is rebutted, the court shall consider –
>
>    . . .
>
>    (B) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

Like its predecessor,[4] which did not define "substantial abuse," § 707(b)(3) does not define "abuse." However, it has long been the law in the Eighth Circuit that a chapter 7 debtor's ability to fund a chapter 13 plan is the primary factor to be considered in determining whether granting relief would be *substantial* abuse. *In re Walton*, 866 F.2d 981, 984-85 (8th Cir. 1989). The Court of Appeals has consistently followed this premise. *Stuart v. Koch* (*In re Koch*), 109 F.3d 1285, 1286 (8th Cir. 1997); *Fonder v. United States*, 974 F.2d 996, 999 (8th Cir. 1992); and *United States Trustee v. Harris*, 960 F.2d 74, 77 (8th Cir. 1992). If the ability to fund a chapter 13 plan constituted *substantial* abuse under § 707(b)(3)'s predecessor, the Court can think of no reason why that same ability should not also constitute the adjective-less abuse now required under § 707(b)(3). This is especially true in light of the fact § 707(b) no longer includes a presumption in favor of granting the debtor relief under chapter 7.[5]

---

[4] Section 707(b) was amended effective October 17, 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Prior to its amendment, § 707(b) permitted a court to dismiss a chapter 7 case if it found "the granting of relief would be a substantial abuse of the provisions of [chapter 7]."

[5] Prior to its amendment in 2005, § 707(b) provided, "There shall be a presumption in favor of granting the relief requested by the debtor."

Re: *Thomas Wayne McNary and Janet Marjorie McNary*
July 18, 2008
Page 5

**Discussion.**  In this case, if they were to commit their admitted monthly disposable income of $162.00 to paying their unsecured creditors, Debtors would be able to pay $5,832.00, less chapter 13 trustee fees, over a 36-month period or $9,720.00, less chapter 13 trustee fees, over a 60-month period.  Even the larger figure might arguably be considered an insignificant sum.  *But see* 11 U.S.C. § 707(b)(2)(A)(i) (in a chapter 7 case involving an "above-median income" debtor, the debtor's ability to pay as little as $6,575.00 over a 60-month period can mandate a presumption of abuse).  However, if they were also to commit the additional $300.00 per month they admit they have been giving their adult children to paying their unsecured creditors, Debtors would then be able to pay $16,632.00, less chapter 13 trustee fees, over a 36-month period or $27,720.00, less chapter 13 trustee fees, over a 60-month period.  Neither figure is an insignificant sum.  Debtors thus have the ability to fund a meaningful chapter 13 plan.[6]

Debtors argue neither *In re Robert D. Mendelsohn and Susan R. Mendelsohn*, Bankr. No. 98-40099, slip op. (Bankr. D.S.D. Nov. 10, 1998), nor the cases cited therein require them to commit the additional $300.00 per month to paying their creditors.  The Court disagrees.  Debtors have pled no facts that would justify their giving their adult children $300.00 per month while Debtors' unsecured creditors go unpaid.  Under the circumstances, permitting them to do so when they could use that sum to fund a meaningful chapter 13 plan would be an abuse of the provisions of

---

[6] The Court is not particularly troubled by the relatively low percentage of their unsecured debt Debtors can pay, for several reasons.  First, focusing on the percentage rather than the amount that can be paid rewards those debtors who incur greater debt.  Second, while the Eighth Circuit Court of Appeals has noted the percentage that could be paid to a given debtor's unsecured creditors, *see*, *e.g.*, *Harris*, 960 F.2d at 77; *Walton*, 866 F.2d at 985, it has never established a "bright line" test for determining how much must be repaid, either in terms of a dollar amount or a percentage of unsecured debt.  Moreover, in a more recent decision on the issue, the Court affirmed the dismissal of a chapter 7 case in which the evidence demonstrated the debtor could "fund a Chapter 13 plan that would repay a *substantial portion* of his unsecured creditors in three to five years." *Fonder*, 974 F.2d at 1000 (emphasis added).  Third, Debtors admit their schedule F may not be accurate.  Fourth, the Court has no way of knowing the total amount of unsecured claims until Debtors' creditors file proofs of claim, which they would be required to do to share in any distribution under a chapter 13 plan.

Re: *Thomas Wayne McNary and Janet Marjorie McNary*
July 18, 2008
Page 6


chapter 7.[7]

      The Court will enter an order granting the United States Trustee's motion for judgment on the pleadings with respect to its motion to dismiss for abuse and dismissing the case.[8]

                                Sincerely,

                                  Charles L. Nail, Jr.
                                  Bankruptcy Judge


cc:    case file (docket original and serve parties in interest)


On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

      [7] In reaching this decision, the Court has not considered the possibility Debtors may have understated their income, as the United States Trustee alleged in his motion for judgment on the pleadings. The United States Trustee pointed to the pay advices Debtors filed pursuant to 11 U.S.C. § 521(a)(1)(B)(iv) as evidence of Debtors' increased income. Because those pay advices are matters outside the pleadings, any consideration of them would only – and needlessly – delay resolution of this matter. *See* Fed.R.Civ.P. 12(c) and (d) and Local Bankr. R. 9014-4. However, if those pay advices support the United States Trustee's calculations, Debtors may have an even greater ability to fund a chapter 13 plan.

      [8] Debtors did not request an opportunity to convert their chapter 7 case to chapter 13 should the Court find abuse under § 707(b)(3).